UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MARY ROWE,

                            Plaintiff,

                                                    **MEMORANDUM & ORDER**

            - against -                             02-CV-0756 (DRH) (JO)


BELL ATLANTIC and MARK QUIELLO,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**APPEARANCES :**

**MARY ROWE**
PRO SE
P.O. Box 311044
Birmingham, AL 35231-1044

**PAUL HASTINGS, JANOFSKY, & WALKER LLP**
75 East 55th Street
New York, NY 10022
By: Allan S. Bloom, Esq., and Zachary D. Fasman, Esq.


**HURLEY, District Judge:**

        Plaintiff Mary Rowe ("Plaintiff") brought the present action against defendants Bell Atlantic

and Mark Quiello (collectively "Defendants") for violations of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, the New York State Human Rights Law ("NYSHRL") § 296, and 42

U.S.C. § 1981 ("§ 1981") claiming she was discriminated against on the basis of her race.  In a

Memorandum and Order dated March 16, 2004 (hereinafter, "March 16 Order"), the Court granted

Defendants' motion for summary judgment as to all Title VII and NYSHRL claims.  As to the

§ 1981 claim, the summary judgment motion was denied without prejudice to renew.  (*See* March

16 Order at 20.)  Defendants now move for summary judgment as to the § 1981 claim.  Plaintiff did

-1-

not submit any opposition papers to Defendants' motion.  For the reasons set forth herein, Defendants' motion for summary judgment is hereby GRANTED.

*BACKGROUND*

The following summary of facts is drawn from the Court's March 16 Order, Defendant's Local 56.1 statement, and the evidence submitted in Defendants' moving papers.  The facts are undisputed unless otherwise noted.  Plaintiff Mary Rowe ("Plaintiff"), an African-American female, began working for Defendant Bell Atlantic ("Bell Atlantic") in October 1966.[1]  Thirty-one years later, on July 18, 1998, Plaintiff voluntarily retired from Bell Atlantic.  Plaintiff does not claim that any aspect of her retirement or the preceding thirty-one years of employment was discriminatory.

At the time of her retirement, Plaintiff worked in the Accounts Reconciliation department of Bell Atlantic.   After Plaintiff's retirement, a "Working Retiree Program" ("Program") was codified as part of the collective bargaining agreement between Bell Atlantic and Plaintiff's former union, the Communications Workers of America ("Union"). Under the Working Retiree Program, Bell Atlantic offered certain recent retirees–referred to in the program as "working retirees"– temporary paid positions. The terms of the Program further stated that "[t]he Company may at its discretion employ a Working Retiree which it considers qualified for the position . . . to meet service needs related to workload peaks, service emergencies, [etc.] . . . .  The Company will determine available job opportunities and the qualifications required for Working Retirees."  (Defs.' Summ. J. Mem., Ex. D at 200 ¶ 4.)

Plaintiff testified that she received a copy of the collective bargaining agreement, which contained the relevant terms of the Program, from the Union in 1998.  At some point thereafter,

---

[1]At that time, Bell Atlantic was known as the New York Telephone Company.

Plaintiff asked her former supervisor about any available opportunities in the Accounts Reconciliation department to return as a working retiree. Plaintiff was not rehired. A total of eight retirees were rehired by the Accounts Reconciliation department in 1999 and 2000, four of whom were African-American women.

Defendant Mark Quiello ("Quiello") was a senior specialist at Bell Atlantic during the relevant period, performing mainly human resources functions. Quiello's responsibilities included ensuring that the necessary working retiree paperwork for Working Retirees had been completed and forwarded to the Human Resources department. Quiello performed no role in the selection of working retirees and possesses no knowledge regarding how the Accounts Reconciliation department selected working retirees. Quiello did not work with the Accounts Reconciliation department after 1999.

*STANDARD*

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Plaintiff did not submit any papers in opposition to Defendants' motion for summary judgment. That fact does not alter the Court's analysis. "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is

entitled to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). "Moreover, in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Id.* at 244; *see also Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## DISCUSSION

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Section 1981 has been interpreted to prohibit race discrimination in the private employment context. *See Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975).

The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny applies to employment discrimination claims under § 1981. *Mudholkar v. Univ. of Rochester*, 229 F.3d 1136 (2nd Cir. 2000); *see also Choudhury v. Polytechnic Inst.*, 735 F.2d 38, 44 (2d Cir. 1984) (applying *McDonnell Douglas* burden-shifting to § 1981 claim). Under the McDonnell-Douglas standard, (1) a plaintiff must first establish a *prima facie* case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; and (3) the burden shifts back to the plaintiff to prove that

-4-

the employer's stated reason for its actions is merely pretextual, and that discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

## I.    Section 1981 Claim Against Bell Atlantic

Bell Atlantic moves for summary judgment on the grounds that Plaintiff has failed to establish a *prima facie* case of race discrimination. (*See* Defs.' Summ. J. Mem. at 9-10.) In order to establish a prima facie case for racially-motivated failure to rehire, Plaintiff must show (1) membership in a protected class; (2) qualification for the position sought; (3) an adverse employment action; and (4) that the adverse employment action occurred in circumstances raising an inference of discrimination. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). There must be a "logical connection" between each element of the *McDonnell Douglas* prima facie case and the alleged illegal discrimination. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996).

The first three elements of the *prima facie* case are not in dispute: Plaintiff was a member of a protected class, was qualified for the position sought, and was not rehired, thereby experiencing an adverse employment action. Defendants narrow their dispute to the fourth factor, arguing that the circumstances surrounding the failure to rehire Plaintiff does not raise an inference of discrimination. Defendants point to the fact that four of the eight rehirees were, like Plaintiff, African-American women.

Regarding the fourth factor, the Court determines whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational fact-finder to infer a discriminatory motive. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997). The mere fact that other members of a protected class were not discriminated against does not bar a discrimination claim, *per se*. *Cf. Brown v. Henderson*, 257 F.3d 246, 256 (2d Cir. 2001) ("[T]here is no *per se* bar to maintaining a claim of sex discrimination where a person of another sex has been similarly treated."). That being said, it does pose a significant hurdle. *See Horsford v. The Salvation Army*, No. 99 Civ. 5721 (WHP), 2001 WL 1335005, at *5 (S.D.N.Y. Oct. 29, 2001) (granting summary judgment because of lack of proof of discrimination accompanied with fact that most of the plaintiff's co-workers were also members of her protected class); *McCulley v. S. Conn. Newspapers, Inc.*, 98 F. Supp. 2d 216, 223 (D. Conn. 2000) ("The fact that the position which the plaintiff sought was filled by a member of her same protected class undercuts her claim of racial discrimination."); *Pointer v. Columbia Univ.*, No. 95 Civ. 8418 (JFK), 1998 WL 898313 (S.D.N.Y. Dec. 22, 1998) (granting summary judgment for employer where another black female employee assumed the position sought by the plaintiff); *Harmon v. Runyon*, No. 96 Civ. 6080 (SAS), 1997 WL 786383, at *5 (S.D.N.Y. Dec. 19, 1997) (holding that the plaintiff had failed to show that she was treated differently from similarly situated employees outside her class where three other members of her class were not subjected to same adverse employment action); *Samuels v. New York State Dept. of Corr. Servs.*, No. 94 Civ. 8645, 1997 WL 253209, at *5 (S.D.N.Y. May 14, 1997) (holding that a black female plaintiff failed to establish an inference of racial discrimination where two out of four promotions she complained of were given to black males).

In the instant case, eight working retirees were rehired by the Accounts Reconciliation department in the two relevant years: 1999 and 2000. Of those eight rehires, four of the individuals were, like Plaintiff, African-American females. It is difficult to imagine a "logical connection" between the circumstances of the adverse employment action, *i.e.* the rehiring of four African-American females, and the alleged illegal discrimination, *i.e.* discrimination against an African-American female.. Nevertheless, Plaintiff could have overcome this hurdle had she provided evidence to support her discrimination claim. Plaintiff failed to do so.

Plaintiff testified that she had no other support for her claim of race discrimination beyond the fact that she believed that two of the white women who were hired ahead of her were less qualified. (*See* Depo. of Mary Rowe, dated Dec. 4, 2002 ("Rowe Dep.") at 117.) That being the case, an employee's subjective belief that an adverse employment action was "'a result of discrimination, without more, is not enough to survive a summary judgment motion.'" *Shabat v. Blue Cross Blue Shield*, 925 F. Supp. 977, 988 (W.D.N.Y. 1996). Thus, Plaintiff's personal belief that she was more qualified than two of the white rehirees does not raise an issue of material fact.

Thus, Plaintiff has failed to proffer any evidence of discrimination, and the circumstances strongly suggest that no discrimination took place. Because there is no evidence that the adverse employment action occurred in circumstances raising even an inference of discrimination, no reasonable trier of fact could conclude that Plaintiff was discriminated against on the basis of her race. Plaintiff has therefore failed to establish a *prima facie* case of race discrimination and the Court need not consider the balance of the *McDonnell-Douglas* burden-shifting. Accordingly, Bell Atlantic's motion for summary judgment is granted as to the § 1981 claim.

## II.    Section 1981 Claim Against Quiello

Defendants also move for summary judgment as to Plaintiff's § 1981 claim against Defendant Quiello.  "In order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (citation and quotation marks omitted). "A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Id.* (citation and quotation marks omitted).  In each of the cases that have allowed individual liability under § 1981, the individuals have been supervisors who were personally involved in the discriminatory activity.  *See Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999).

As Defendants argue, the testimony of Plaintiff and Quiello "conclusively established that Quiello's role in the Working Retiree Program was limited to providing retirees with forms and serving as a conduit for paperwork completed by retirees wishing to participate in the program." (*See* Defs.' Summ. J. Mem. at 18.)  Quiello testified that he simply handled the paperwork and had no decision making responsibilities in any manner in relation to the Working Retiree Program.  (*See* Dep. of Mark Quiello dated Feb. 20, 2002 ("Quiello Dep.") at 55.)  Plaintiff made no attempt to undermine Quiello's testimony.  Rather, Plaintiff testified that she did not know if Quiello had actually made the hiring decision; she only knew that Quiello was the person who informed one of the white rehirees that she had been rehired.  (*See* Rowe Dep. at 111 & 124.)

As a result, the uncontroverted evidence before the Court is that Quiello had no role whatsoever in the alleged discriminatory activity.  Quiello testified that he had no decision-making authority in the rehiring of Plaintiff, and Plaintiff did not dispute that contention.

Because individual liability under § 1981 is predicated upon the individual having some decision-making authority, and Quiello had none, the Court grants Defendants' motion for summary judgment as to the § 1981 claim against Quiello.

*CONCLUSION*

In sum, Plaintiff has failed to make a *prima facie* case of race discrimination against Bell Atlantic or Quiello. Thus, the Court GRANTS Defendants' motion for summary judgment. The Clerk of the Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
      February 7, 2006

                                        /s/
                                        Denis R. Hurley
                                        United States District Judge